T.C. Summary Opinion 2007-62

UNITED STATES TAX COURT

ROBERT J. AND SYLVIA DEWARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2388-06S.                    Filed April 25, 2007.

Robert J. and Sylvia Deward, pro sese.

<u>Jeremy L. McPherson</u>, for respondent.

RUWE, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $3,913 in petitioners' 2001 Federal income tax and an addition to tax of $583 under section 6651(a)(1).[2]

The issue the Court must decide is whether $15,892 in "other expenses" that petitioners listed on a Schedule C, Profit or Loss From Business, attached to their 2001 tax return are "start-up expenditures" as defined by section 195, resulting in the disallowance of deductions claimed for those expenditures.[3]

## Background

Some facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference. When the petition was filed, petitioners resided in Walnut Creek, California.

Petitioner Robert J. Deward has a master's degree in journalism from the University of California, Los Angeles (UCLA). Mr. Deward worked from 1970 through 1997 as a full-time

---

[2] Although the notice of deficiency refers to an accuracy-related penalty under sec. 6662(a), respondent concedes that this was a scrivener's error by respondent and the notice of deficiency should have referred to the addition to tax under sec. 6651(a)(1). Respondent has since conceded that petitioners are not liable for any addition to tax under sec. 6651(a)(1).

[3] In the notice of deficiency, respondent adjusted petitioners' medical expense deductions and miscellaneous itemized deductions because of the change in the determined amount of adjusted gross income. The correctness of these adjustments depends upon our resolution of the issue stated above.

journalist and writer for a major telecommunications company.[4] He retired from that position in 1997. Between 1997 and 2005, Mr. Deward conducted research for a book that he plans to write on World War I (WWI). For 27 years, Mr. Deward has concentrated on military tactics, model soldiers, and books relating to WWI. He has also built up his own library on these subjects. In 2001, petitioners traveled to Europe for the purpose of conducting research for the proposed WWI book. At the time of respondent's examination of petitioners' 2001 return in 2005, Mr. Deward had not yet begun the actual writing of the book on WWI. However, he was still conducting research.

Petitioners timely filed their 2001 joint Federal income tax return, including two Schedules C. The first Schedule C relates to Mr. Deward and lists his principal business as "Author". The second Schedule C relates to petitioner Sylvia Deward and lists her principal business as "Interior Design".

Respondent issued a timely notice of deficiency to petitioners for their 2001 tax year. Respondent disallowed all of the $15,892 of "other expenses" claimed on Mr. Deward's Schedule C. Those expenses consisted of $1,765 of amortization and $14,127 for research and development. The research and development deduction on Mr. Deward's 2001 Schedule C consisted

---

[4] The company has changed its name from Pacific Bell to Pacific Telesis and is currently called SBC.

of expenses petitioners incurred while on a trip to Europe in 2001 and of research expenses, all related to the proposed WWI book.  In support of his claimed deductions, Mr. Deward provided a letter from a publisher, Military History Press L.L.C., dated August 15, 2005, saying that they would like to review his materials "with an eye to future publications".  Mr. Deward also provided a document titled "The Development of Military Doctrine by the German and British Armies During the Course of the Great War" which he presented to his local chapter of the "Great War Society" in September 2006.

Discussion

Section 162(a) generally allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  What constitutes a trade or business is not statutorily defined; rather, it requires an examination of the facts in each case.  Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987).  To be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity, and the taxpayer's primary purpose for engaging in the activity must be for income or for profit.  Id. at 35.

Respondent alleges that as of the close of 2001, Mr. Deward had not begun the actual writing of his book on WWI, nor had he created an outline.  Respondent argues that Mr. Deward was,

therefore, not engaged in the conduct of the active trade or business of being an author in 2001. Rather, respondent avers that Mr. Deward's expenses in performing research for the book he hopes to write are "start-up expenditures" as defined in section 195(c)(1). Generally, no deduction is allowed for start-up expenditures. Sec. 195(a).

Section 195(c)(1) defines "start-up expenditures" as:

> (1) * * * any amount--
>
> > (A) paid or incurred in connection with--
> >
> > > (i) investigating the creation or acquisition of an active trade or business, or
> > >
> > > (ii) creating an active trade or business, or
> > >
> > > (iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and
> >
> > (B) which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred.

As a general rule, the Commissioner's determinations in the notice of deficiency are presumed correct, and the burden of

proving an error is on the taxpayer. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).[5]

Petitioners argue that our Memorandum Opinion in <u>Vitale v. Commissioner</u>, T.C. Memo. 1999-131, affd. without published opinion 217 F.3d 843 (4th Cir. 2000), sets a precedent for the allowance of their research and travel expenditures in 2001, and that it would be discrimination if their expenditures were disallowed. Approximately 2 years before he became eligible to retire from his full-time job (1992), the taxpayer in <u>Vitale</u> began writing with the hope of starting a second career as an author. In 1992, he wrote a book-length fictional manuscript and a collection of short stories. In 1993, the taxpayer wrote an 18,000-word draft of a third book, which he submitted for copyright registration in June of that year. In October 1993, the taxpayer entered into a publication agreement for the third book. He also actively participated in the promotion of his book. During 1993, the taxpayer incurred costs conducting interviews and performing research for the copyrighted book. On his 1993 Federal income tax return, the taxpayer for the first

---

[5] Pursuant to sec. 7491(a), the burden of proof as to factual issues may shift to the Commissioner where the taxpayer introduces credible evidence and complies with substantiation requirements, maintains records, and cooperates fully with reasonable requests for witnesses, documents, and other information. Because petitioners have failed to provide credible evidence to support their claim, the burden of proof remains with them.

time treated his writing activity as an active trade or business. Although the taxpayer had no gross receipts from his writing activities in 1993 or 1994, the Court concluded that he had engaged in the conduct of a trade or business in 1993 and allowed some of his deductions.[6]  We believe that Mr. Deward's activities can be distinguished from those of the taxpayer in Vitale.

At trial, petitioners introduced numerous documents in support of Mr. Deward's claimed expenses.  Mr. Deward's testimony at trial indicated that the transcript he presented to his local chapter of the "Great War Society" in September 2006 was the first material he had written with the intention of including it in the book.  Mr. Deward conceded that those materials were written in the summer of 2006.  He also testified that he received no gross receipts from the trade or business of writing books between 1997 and 2005.  Mr. Deward presented no evidence establishing that he approached a publisher before receiving the letter from Military History Press L.L.C. in August 2005.

Evidence of written materials that could potentially be included in a book and of communication with a publisher may indicate that Mr. Deward is interested in writing and publishing a book sometime in the future.  However, these events occurred

---

[6] Some of the taxpayer's deductions were disallowed for reasons not relevant to the instant case.  Vitale v. Commissioner, T.C. Memo. 1999-131, affd. without published opinion 217 F.3d 843 (4th Cir. 2000).

more than 4 years after the taxable year in issue and cannot be considered evidence of Mr. Deward's being in the active trade or business of an author in 2001.

Respondent notes that unless petitioners show that Mr. Deward was actively engaged in the business of being an author for profit, his expenses will be disallowed under section 183. However, respondent cites Goldman v. Commissioner, T.C. Memo. 1990-8, for the proposition that whether Mr. Deward had a profit objective is of little relevance if he did no more than prepare to begin the business of being an author. In Goldman, the taxpayer worked 15 to 20 hours per week in the process of making a documentary film. However, at the time of the trial, the taxpayer estimated it would take another 1-1/2 to 2 years to complete the film, which he could not sell until it was completed. For the year at issue in that case, the taxpayer had reported a loss attributable to his filming activities. This Court held that even if the taxpayer were found to have the requisite profit objective, we would sustain the Commissioner's contention that the taxpayer was "merely preparing to enter the trade or business of producing and marketing films."

Mr. Deward's situation is similar to that of the taxpayer in Goldman. Whether or not he had a profit motive, Mr. Deward has failed to establish that he did anything more in 2001 than research for the book that he intends to write about WWI. The

expenses related to researching a topic in order to write a book, without more, are "start-up expenditures" within the meaning of section 195. Accordingly, we will sustain respondent's determination to disallow the miscellaneous deductions of $15,892 on Mr. Deward's Schedule C relating to amortization and the expenditures incurred for research for his book, including costs for traveling to Europe.[7] We will additionally sustain respondent's adjustment of petitioners' medical expense deductions and miscellaneous itemized deductions because of the change in the determined amount of adjusted gross income.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[7] Although we disallow the deductions in issue here, we note that a taxpayer may elect to treat start-up expenditures as deferred expenses, deductible pro rata over a period of at least 60 months, beginning with the month in which the active trade or business begins. Sec. 195(b)(1). We need not decide here whether Mr. Deward's travel expenditures qualify for this treatment.